## INHABITANTS OF SWANZEY *vs.* INHABITANTS OF SOMERSET.

Bristol. Oct. 26. — March 30, 1882. MORTON, C. J., W. ALLEN & C. ALLEN, JJ., absent.

The St. of 1789, *c.* 35, § 3, by which a part of a town was incorporated into a separate town, provided that the inhabitants of the new town should thereafter support and keep in good repair their proportionable part of a bridge known by the name of M. bridge in the same proportion that the towns now pay in the present valuation. The bridge referred to crossed a river, and from each end of the bridge a causeway was built of earth and stones. In 1878, a new bridge was built, higher and wider than the old, and it became necessary to raise and widen the causeways accordingly. *Held*, that the word "bridge" in the statute meant the structure which crossed the stream and its approaches, and did not include the causeways, in the absence of any custom, usage or agreement existing between the two towns which fixed the construction to be given to the word.

FIELD, J. This action is brought on the St. of 1789, *c.* 35, § 3, whereby a part of the town of Swanzey was incorporated into a separate town by the name of Somerset. By that section it was enacted " that the inhabitants of the town of Somerset shall forever hereafter support and keep in good repair their proportionable part of a bridge known by the name of Miles's Bridge in the same proportion that the town of Swanzey and the town of Somerset now pay in the present valuation."

The report finds that at the time of the passage of this act there was an ancient bridge across the channel of the river, about fifty-eight feet long, resting on two abutments and a pier, and from each end of this structure a causeway built of earth and stones, and riprapped with loose stones on the sides, extended to the high land, on the east about six hundred and seventy feet, and on the west about eighty feet. The river is a tidal river with a tidal flow of three feet and five inches between high and low water, and the water extends at low tide about one hundred feet easterly from the east abutment, and to the high land on the west. On the east the causeway was for the greater part of the distance over a marsh, which extended from the high land to within about one hundred feet of the east abutment, and was from one to two feet higher than the marsh. At high tide the marsh was covered with water to the high land, and occasionally, at very high tides, the water

covered the causeway in places. This wooden bridge having been carried away by a freshet in 1878, a new iron bridge has been built. It is seventy-five feet long, and rests on two abutments with wing walls.

The defendant has paid its proportion of the cost of the iron and stone work and of the filling in between the wing walls and of everything done to complete the structure, and the approaches from the causeway to it; and this action is prosecuted against the defendant to recover the same proportion of the cost of repairing and improving the causeway near the bridge which were necessary and proper to be done in order to make the causeway correspond with the new bridge, which was made wider and higher than the old one.

The justice who tried the cause without a jury found that no custom, usage or agreement existed between the two towns which fixed the construction to be given to the word " bridge " in the St. of 1789; and ruled that this word in that statute meant the structure which crossed the stream and its approaches, and did not include the causeway; and refused to rule, as requested by the plaintiff, " that the support and keeping in good repair under the statute would reasonably mean all of the structure necessary for a highway which lies between high-water mark on the shores of the river on each side; or, if not, at least all of it which lies between low-water mark on each side of the river." No objection was taken by the plaintiff to the finding by the justice of what constituted the approaches to the bridge, if the construction put upon the meaning of the statute is correct. See *Commonwealth* v. *Deerfield*, 6 Allen, 449.

If this statute had imposed the duty on the two towns of constructing and maintaining a bridge over this river, and there had been no existing structures of any kind over any part of the river, the argument of the plaintiff that it was the intention of the statute that the two towns should construct and maintain a way or bridge across the whole river, so that travellers could pass over it even at high tide without passing through the water, would have much force, and it might well be left to the two towns to construct this way or bridge in any reasonable manner, which might be by solid filling in part and in part by a structure of wood or iron such as was built in this case. But this

was a very ancient road and bridge. It does not appear how long the road and bridge at this point over the river had existed at the time of the passage of the St. of 1789, although by the Prov. St. of 1736–7 (10 G. II.) *c.* 5; 2 Prov. Laws (State ed.) 795; it appears that a bridge called Miles Bridge in a country road had theretofore been constructed and had fallen into decay, and the towns of Swanzey and Barrington were ordered "to build a good and substantial cart bridge across the said river in the country road aforesaid where the said bridge did stand."

The statutes of the Commonwealth have recognized a distinction between causeways and bridges by using these words in their natural signification in the acts relating to the repair of highways. The St. of 1786, *c.* 81, § 1, which was in force when the St. of 1789 was passed, provided "that all highways, town ways, causeways, and bridges, lying and being within the bounds of any town, shall be kept in repair and amended from time to time," &c.; and § 7 of the same act provided for the recovery of damages by any person who is injured "through any defect, or want of necessary repair and amendment of any highway, causeway, or bridge," &c. Substantially the same language is found in the Rev. Sts. *c.* 25, §§ 1, 21, 22, the Gen. Sts. *c.* 44, §§ 1, 21, 22, and the St. of 1877, *c.* 234, §§ 1, 2. The same distinction in the use of these words is found in the Prov. St. of 1693–4 (5 W. & M.) *c.* 6, §§ 1, 6; 1 Prov. Laws (State ed.) 136.

If it had been the intention of the Legislature to impose on the town of Somerset by the St. of 1789 an obligation to support and keep in good repair any part of an existing causeway or highway, we think the usual and appropriate word would have been used; and that the construction given by the justice who tried this cause was correct.

*Judgment for the defendant.*

*J. Brown*, for the plaintiff.

*J. M. Morton*, for the defendant.